Hernandez v. Causey. Mr. Snigley. Good morning, Your Honors. Tim Snigley. I represent Mr. Hernandez. I'd like to reserve five minutes for rebuttal. I will primarily be arguing the 1983 action. If I have time, I'll try and touch on Bivens, but I believe the 1983 action is absolutely applicable. The main things I want to strive on the 1983 actions are the two errors made by the court, lower court, and argued by the defendant. That being that in 1983, federal officials are not treated differently in jurisprudence, statutes, or the Constitution. And the other is that there is not a requirement with the joint activity test to be a joint participant and agree to conspire the deprives of constitutional rights. I thought in the case law . . . I thought in the case law, federal officers are treated differently than private actors for two reasons. They're presumed to be operating pursuant to federal law, number one. And then number two, the emerging rule of law in the cases is that they only assume joint action liability if there's evidence that they actually conspired with the state officials to violate a right. Do you agree with those or . . . No, I disagree totally, Your Honor. Totally, okay. First, there is no . . . the statute itself just says every person. It doesn't say every person except. And this court's decision in Knights of the Ku Klux Klan applied the joint conspire or act jointly with. The words, or act jointly with, comes directly from Adikides versus Addison, from, I mean, Kress, from Lugar versus Edmondson, as well as this court's decision in Lowentritt versus Ernest, Sims, Phillips versus Vandergrift . . . Do you lose if we think that the test for federal officials is evidence of conspiring? Do you lose? No, I don't think you . . . I don't think you need to show . . . I know you're saying that. Let's say we aren't persuaded by that. Did your complaint not make an allegation of . . . Yes, I think it did. I think it . . . from the standpoint of an agreement, a prior agreement had been reached to essentially avoid not only the United States' decision in U.S. versus Ponce, but also federal regulations. Federal legislations prohibit or actually only allow ICE agents, this is H.C.F.R. 827.8, they only allow to briefly detain somebody if they have a reasonable suspicion based on specific articulable facts. That follows the language of Brangoni, Ponce, almost directly. Yeah, but you don't have a case right now in front of us against Driscoll, right? Your case . . .  So you do have a pending federal tort claim act. In many ways, whether you perceive this as favorable or unfavorable, it looks to me like what went wrong here is federal action. The state, in some other showing, might be shown to have pulled over the two brothers improperly, but with the focus on Causey, he runs them down and shoots them, and that sounds like a federal agent that may have misused his authority. How did he do that under direction of anyone that was state? Driscoll requested the assistance . . . Of ICE generally. Of ICE . . . Generally. And I alleged in a petition that all ICE agents talked to each other and knew that they were just there to assist. Okay, but even granting you that, which I do agree, called for translation, maybe it's a ruse, still the federal people show up, but at no point, correct me if I'm wrong, does Driscoll say to Causey, oh, when you run them down, shoot them too? Okay, now you're raising a couple of different issues here. First, you're raising the issue of there has to be some prior agreement to shoot somebody. Well, even if it were just joint action, I don't see any state official jointly acting to seize him through a lethal shot. It has nothing to do with whether or not he shot or not. Well, that's the excessive force, isn't it? That's the excessive force, but as far as the question of the two things that have to be shown for a 1983 action, you have to, one, show that there was a deprivation of constitutional rights by somebody. That's the shooting. Right. The next thing is that person has to be acting under the color of state law at the time. To do, to deprive him of the constitutional . . . The Supreme Court has said these are two distinct inquiries. What you're trying to do is now join two and make one rule, but it's not. It's two rules, separate and distinct. The distinction . . . The distinction, and you're being appropriately precise, let me shift the question. Okay. What circuit do you think articulates the joint action rule that you're urging? That I take it is Lindkey. It's the private actor rule. They willfully participate. That's what you're urging us on. Okay. I think that this Court's decision in Knight and Rodriguez are the two most directly on point. It's a federal agent, a federal officer that, quote, conspired or acted jointly with state officials that allowed a 1903 action to be viable against the United States, which would then provide attorneys for this. That's where Rodriguez's side, right? Because that's a footnote. The language you'd be relying on is in a footnote that's clearly dicta. Well, is it? Because here's the thing. It's not dicta if it is a statement that's necessary for the outcome, and in that outcome, the United States could be liable for attorney fees. The defendant, well, 1983 has to afford a remedy to the individual for the violation of 1983. 1983 has to provide a remedy. 1983 cannot provide a remedy in Rodriguez unless the only two people for the United States that were there are the two Border Patrol agents. That's a necessary part of it. Because they would have been acting or they were acting on the color of state law, because of that, the United States can be liable for attorney's fees on the 1988. Remember, on a 1988 attorney's fees, if you do not allege in the complaint or the allegation that a 1983 action, you can still be liable so long as 1983 provides the remedy, provides a remedy. 1983 can provide no remedy in this case unless those two police officers or Border Patrol agents are acting on the color of state law. How else can the United States even act in that case except through those two officers? But get back to the Knights of the Ku Klux Klan. This court said a federal official, who is, he's the head of the Dallas Department of Health and Education and Welfare at the time, that the United States could be liable on 1983. Because what did the court say? The court said conspire or act jointly with. The acting with the state officials provides a necessary state action. That's the same exact same thing here. These two officers, I mean Carsey and Lee, but Carsey in particular, had no authority on the federal law. None. Zero. That authority under 8 CFR 827.8, it's limited to having a reasonable suspicion based on articulable facts to stop and question somebody. All the circuits acknowledge the government's primary point, which is federal officers assist, they cooperate all the time. So you need something more than cooperation. Let me just finish the question. Because they are called in to assist, whether it's a ruse or not, they're called in to assist. So you're saying, I think, legally, willful participation alone suffices, even as to federal officers. Because that equates to joint action. And I have two difficulties with that. One is, the assistance and the joint action have to be to deprive an individual of a constitutional right. I'm not sure that I see that pled here. It looks to me like the federal officers did the hot pursuit, and only Carsey decided to continue that with a shooting. Secondly, I am not sure I accept your characterization that there's an equivalence. It seems to me that the consensus of circuits is that there's got to be evidence of actually conspiring to deprive a person. Those are my two concerns. Well, I don't see any other circuit that says that you have to have the conspired to deprive. All of them have mostly phrased it in the alternative. Or conspire, or substantial participation with. And that's exactly what this court did here in Knights. And under Knights, it does not say, in fact, look at when in Knights itself. That just seems to me very hard to harmonize with the Supremacy Clause, and what federal officers do every day. They show up to cooperate. Are you saying any time they cooperate, and an individual, say, gets baptized, or?  So what's the limiting principle? The limiting principle is whether it is a state action or a federal action to start with. To start with, for example, in United States Code 1357G, state officials, state employees can be empowered to assist immigration officers. It has to be in writing. That's your joint task force. But you can't have a situation where a federal officer can now suddenly do something, get requested like they were in Rodriguez, and suddenly say, no, I'm acting under federal law. He's not acting under federal law. What federal law is he acting under? He doesn't have authority under H.C.F.R. 287.8. He has no authority to go after this person. He has no authority. That sounds like you are saying any time federal officers try to assist state officers, they are state actors. If they are called in to assist a state officer on a state matter, yes, they are then acting. They lose their federal law, and they become state actors. They're no longer acting under the color of federal law. I don't see any circuit that's embraced that in a determinative way. I hear what you're saying about disjunctive language. This circuit did it. No disjunctive language. They said conspire or joint act. And look at what the conspiracy was. Let's compare that conspiracy in Knight to what I've alleged here. I've asked you a lot, and you've answered. Can we talk about Bivens for a second? Okay, yes. Isn't this a new situation? You know, Bivens is somewhat on life support. It can't be extended to new situations. We did have a case in the past year where we allowed a Bivens case to go forward, but should this go forward on Bivens? Okay. This is the thing to me in Bivens and with Egbert in particular. Okay. Egbert specifically said, we are not dispensing with Bivens. We are just trying to get a disfavored activity, citing Ziegler. Look at Ziegler. In fact, Egbert cited Ziegler throughout, especially for, well, this was in Congress's hands to determine economic factors and other factors. But Ziegler said, this opinion is not intended to lessen the necessity of Bivens in a law enforcement sphere, and this is that law enforcement sphere. And here's another thing. Would we create a circuit split, though, if we decided that ICE agents are subject to Bivens suits? You might. You might, except the thing is that this situation is a local law enforcement activity. This is not an immigration enforcement activity. This is not a deportation removal activity. This is a state, some police officer wanted to stop an individual. Nothing to do with national security. And if I get back to, part of Egbert says that, well, Congress has provided a remedy by allowing someone to file a complaint. Well, that sort of conflicts, in my opinion, with the Westfall Act. The Westfall Act allowed suits for damages against violation of the Constitution. Allowing just an investigation provides no remedy, no matter what they find. And in this case, the investigation ignored the fact that one officer saw Hernandez with his hand raised. Thank you, Mr. Siniglia. We have your argument. You saved time for the rebuttal. Okay. Thank you. Good morning, Your Honors. Jennifer Utrecht on behalf of the defendant. Your, plaintiff spent a majority of the arguments talking about 1983, and I'd like to get to that, but I would like to say a few brief words about Bivens first, because I think it provides important context for this case. Because really, at bottom, this is a Bivens case. Plaintiff seeks relief in the form of damages against a federal employee in his personal capacity for conduct that the federal employee engaged in during the course of his official duties. The Supreme Court has made abundantly clear that implying a cause of action under Bivens is a disfavored judicial activity. The district court faithfully applied that precedent here, and held that the plaintiff cannot expand the Bivens damage remedy to plaintiff's excessive force claim, because that claim involves a new context, and because there are alternative remedial schemes, including the availability of a claim under the FTCA for the conduct, for the alleged violation in question. That's the remedy that Congress has prescribed, damages against the United States for these types of alleged intentional torts, and because there's an alternative remedy, that's how plaintiffs should proceed here. Plaintiff has tried to get around this well-established body of law by arguing that he can obtain damages against the defendant under 1983, which is a statute that Supreme Court has recognized facially exempts conduct by federal employees. And I think that really answers the question here. The Supreme Court has made clear in recent years that implying causes of action, that expanding 1983 unless congressional intent was absolutely clear that it intended to create a private damages remedy, is disfavored. You're still talking about Bivens? Have you shifted? I think the logic of Bivens applies equally to plaintiff's claim. Slow down a little bit. Absolutely. I'm happy to. Because then I was a little unclear reading the brief. Of course, he's asserted quite a strong position that private actor is equivalent to federal actor. It's just willful participation. Are you now saying that you disavow the body of law, and you're saying there is never a situation for under a federal officer? I have two points in response to Your Honor's question. The first is that the majority of the cases that plaintiff cites, which even contemplated the possibility that a federal defendant could be held liable under 1983, long predate the Supreme Court's more recent jurisprudence about implied causes of action. And I think there is a real question whether that body of law is consistent with the Supreme Court's decisions. But this Court does not need to go that far in order to affirm the district court's decision here. Well, I do really, because as you point out, it's an issue arguably first impression, maybe not. But it's a very common situation. Even accepting your description of the facts that federal officers are cooperating with state officers. So, it's very important for us to understand the government's position. Yes or no, you accept cases like the Second Circuit's O'Rourke case, the Tenth Circuit's Big Cats case, what I read as RKK case, which would be binding on us. That is to say, federal officers can be liable under 1983 with this heightened standard of when it's shown that they conspire to deprive someone of the constitutional right. Are you resisting that as a rule of law? I think, so to be very clear, I think you can assume without deciding that those cases are correct in order to rule in our favor. Those cases all stand for the proposition that if you are going to hold a federal official liable under Section 1983, it has to be in truly extraordinary circumstances where there really is a conspiracy or joint action, and not joint action in the broad cooperative sense, but specifically that state and federal officials together commit the alleged constitutional violation. Okay. I'm a little bit confused that we're going to be assuming but not deciding if these cases are applicable, because that seems to be exactly backwards of what our rule of orderliness says we're supposed to do. We're supposed to apply the cases, one of which is in our circuit, until the Supreme Court explicitly says it's not the law, and you kind of have gone, well, the Supreme Court may be percolating that that's not the way we're going to go, and so you can sort of assume in the background that you have these cases, but they don't . . . We have to actually apply those . . . at least the one that you mentioned that is our case, and perhaps the other case . . . Absolutely. Rodriguez may be in debate, but the other one isn't. So, can you help me get back to . . . You may be wanting to be in a court in Washington making the argument you're making, because . . . or at our en banc court, but I don't think that we can do what you would want us to do. Well, allow me to address this Court's precedent first, and then I will turn to the other circuits. So, first of all, both Knights and Rodriguez, neither case held federal defendants liable under 1983 for damages. Knights was a case about attorney's fees against the United States, and this Court held that the United States, because Section 1988 specifically authorizes holding United States liable in attorney's fees, that the United States could be held liable in damages if the United States acted under color of state law. There has never been a case in this Court holding that a federal defendant could be liable in his personal capacity under 1983, and I . . . you know, that's the main reason that Knights does not compel this Court in any way in this case. We say when federal officials conspire or act jointly with state officials to deny constitutional rights, the state officials provide the requisite state action to make the entire conspiracy actionable under 1983. And the . . . You're saying there's some subtlety to that? Well, the entire . . . I mean, that was the second point that I was going to raise with respect to this Court's precedent, Your Honor, is that . . . I mean, the language is there, the entire conspiracy. And joint action, you know, the defendant has pointed . . . or, sorry, the plaintiff has pointed to the disjunctive language in this case and others, but doesn't actually explain why the facts here amount to the kind of joint action this Court was referring to in Knights or other courts were referring to. If you look a little bit longer around, you can just see both of us are really trying to press whether or not you're telling us never federal officer liability. That's very difficult here. So I . . . I . . . We're not saying never, Your Honor. Let's get the example of cause . . . I mean, Hernandez calls McGee, whom he did call, correct? Wasn't McGee the ICE officer? I believe that's . . . And then on the phone, he says, hey, come here, let's do this pursuant to our translation rules, and as soon as you come here, shoot the guy. So, to be clear, Your Honor, we are not saying that a federal defendant can never be held liable under 1983. But on those facts. On those facts. I mean, so the key points that you've alleged there that I think better translate onto the things this Court and other courts have said about when someone might be held liable under 1983 are there is a clear agreement to commit the constitutional violation, which we don't have here. It's not a clear way. Let's say, instead, it is causing, hey, come help us. Legitimate help. No allegation of a ruse. He shows up, but he sees a fully cuffed defendant being beaten. So restrained and cuffed. And he just jumps in. There's no agreement. He just participates in what is an ongoing state constitutional deprivation. How would he not be liable? What I would say to that . . . Why does there have to be some spoken agreement? So what I would say that, Your Honor, again, is that there's facts that he's jointly participating in the constitutional violation that's alleged. And we know, you know, from both the private party context and the federal defendant context, that under color of state law is an intensely fact-specific inquiry. And so we're not saying that a federal defendant can never be held liable. We're saying that it would be truly extraordinary circumstances where there is . . . where, you know, it's abundantly clear that there is . . . As there's a presumption he's operating under federal law? The presumption? There's a presumption that he's operating under federal law. There's also . . . Do you lose under the willful participation test? Do you have to have . . . It sounds like you know this case law very well. I'm mostly thinking about the footnote 8 in Big Cats, where the court says, well, we're not going to decide this, but we think a federal officer wouldn't be equivalent to a private actor. And that's because of the Semperemcy Clause. The presumption is they're acting under federal law. Do you remember that? Yes, Your Honor. Sorry, could you repeat the question that . . . Well, I guess, and I respect that you're resisting a categorical statement. What you are trying to say is on these facts, as alleged, it wouldn't meet any of the tests. Absolutely. It would not meet any of the tests. And I, you know, I heard Plaintiff articulate a couple of theories today about why he thinks it meets the test. But as I understand the argument, all of his allegations about joint action involve a constitutional claim that is not at issue here. He has suggested that the stop that was initiated was pretextual. He has suggested that it was unlawful for federal or state law enforcement to pursue him when he left the stop. That is not the constitutional claim here. Page 16 of the District Court's opinion said that the Plaintiff has not pleaded a viable claim for an unreasonable seizure based on a pretextual stop or an unreasonable . . . That's absolutely correct, Your Honor. And as to that, there is no allegations in the complaint of either a conspiracy or joint action. There's no agreement to shoot the Plaintiff. There's no allegations that the state officers participated in the shooting or encouraged the shooting in any way. As the District Court found in its decision, all of the allegations lead to the inference that the decision to shoot the Plaintiff was the defendant's and the defendant's alone. And that is why there is nothing to overcome the strong presumption that federal officers are acting in their federal capacity here. What federal capacity is this officer acting under, the defendant ICE agent? What is he doing as a federal agent at this scene? He's acting as a federal ICE agent. He came . . . What is he doing as a federal ICE agent at this scene? That's . . . He's not dealing any kind of immigration. He's not . . . He's not . . . How is he acting as a federal ICE agent? Well, Your Honor, start with the premise that he was asked to come to the scene by other federal ICE agents. He showed up in an ICE van. He was told by, I believe it was Officer McGee, a federal ICE agent, to follow Hernandez, who had at that point run from the traffic stop. All of his . . . You know, he was only there in his federal capacity. He was only there and directed by federal officers to follow the Plaintiff. Why is he following the Plaintiff? The opposing counsel, your friend on the other side, says that there's not a federal statute that would apply to his conduct. So, what is the federal interest at this thing? Is it because . . . Is there some sort of turnover to people who might be . . . I could see that there could be, but what is the federal interest here? Well, I guess this goes to the broader point, Your Honor, that federal and state law enforcement cooperate all the time.  And they have cooperation agreements, and sometimes they're acting as part of the federal task force, and sometimes it's the state task force, and you've got all these . . . Usually, it's defined by agreement of the parties. And it would be helpful if this had been, because then I might not be asking you these questions. What is the federal role here in this stop? The federal government was asked to provide translation assistance by the local . . . Translation assistance. So, the ICE van shows up . . . They didn't provide a translator. They show up in an ICE van to provide translation assistance. That's the role? Federal translation assistance. That's the federal government . . . I can only tell you, because we are limited to the facts of the complaint here, you know, the allegations of the complaint. That is why we know ICE was there. That's why they . . . We have to take that. Yeah. You know, I also say that law enforcement situations are constantly evolving. And, you know, this isn't pleaded in the complaint, but we know that the plaintiff fled from the ICE van, at which point it does reasonably become an immigration issue.  Well, that's . . . We have to use the complaint. And so . . . And I think more fundamentally, it's important to emphasize here, Your Honor, that who has jurisdiction over particular arrests is not really how we are supposed to be making decisions about whether someone was exercising federal authority or not. And we know this because when we talk about whether someone is clothed with authority of state or federal law, that includes situations where they are exceeding that authority or acting unlawfully. The ultimate question is, you know, was he using his power as a federal officer or was he using some power given to him by the state? And, you know, his authority to make arrests, to use force, comes from the federal government. It was not a privilege that was given to him by the state. And unless there's some allegation here, which there is not, of a conspiracy with state actors or that state actors participated in this constitutional violation, that presumption that he's exercising his federal authority is dispositive. Slightly against maybe the larger federal government interest, but the unconstitutional outcome here is entirely federal. That's your point. In other words . . . Right? Am I right? That Driscoll was just doing a traffic stop and Hernandez is the one who does a rolling stop. He goes through. The other guy looks drunk. He just pulls him over. And then there's communicative difficulty. He needs help. Feds show up. And then bad things happen. That's right. So is that correct? You're saying accepting all facts is true. The excessive force was solely committed by the federal officer. That's also consistent with the fact that the FTCA claim has gone forward. Is that correct? Yes. And that's also consistent with the fact that the FTCA claim against the United States has gone forward. Because in order for there to be an FTCA claim, there has to be a determination about whether the defendant was acting within the scope of his federal employment in his official capacity. If he wasn't, if he was a private actor, if he was outside the scope of his employment, it would not fall within the bounds of the FTCA. And so the fact that this FTCA claim is going forward shows that we agree this is fundamentally a federal, these allegations are fundamentally allegations that the federal government and federal employees have done something illegal and not that the state has. Okay. Does it, you were talking about that there's not evidence about the conspiracy to shoot, that that was no conspiracy to shoot, and that's what the district court relied a lot on. That's correct. Is that the only part that could be in the 1983 claim? Is that, because what about that they're going to seize him for questioning and continue to detain him knowing that there was no basis to do so? That's what the complaint says. Is that, can that part be considered or is it only the ultimate shooting? Because why isn't the seizing for questioning when there's no basis to detain him also part of the 1983 claim? Perhaps it's something basic I'm missing.  So, Your Honor, the district court explained this, that the question of an unreasonable seizure is separate from the question of the excessive force claim. They're different complaints. And the district court held, which the plaintiff has not challenged here, that the plaintiff has not pleaded an unreasonable seizure claim, that he's made allegations but not actually laid out the specific things that are necessary to show that kind of a constitutional violation. Well, I don't understand why pages 2 and 3 of the complaint, paragraph 4, doesn't do exactly that. I'm sorry, make sure I'm looking exactly. Maybe I'm missing something. Pages 2 and 4, you said? It's paragraph 4. I maybe said the wrong, 2 and 3. They responded to the request for assistance. They communicated, began working jointly to pursue, stop, and seize for questioning in the local police operation, although no probable cause exists to seize him and the knowledge that they had knowledge that he had not violated any laws. So, and that, yeah, and that they just were doing it because he was mouthy. So I want to be very clear, Your Honor. The plaintiff here has not challenged that aspect of the district court's. Okay, so I can't look at that. You know, the district court held that there is no plausible Fourth Amendment violation based on a reasonable seizure, that he has not alleged sufficiently that there was not probable cause. He has not challenged that specific aspect of the decision, and to be clear, the district court did not opine on whether, you know, if he had pleaded that separate constitutional violation, whether that would be under color of state law, and I believe it's a footnote on page 16.  Says, you know, I'm not addressing whether that's a. That's why I'm trying to figure out, because to me that seems like that is a plea of that, that says that right there, that they knew that they had no basis to detain him and wanted to detain him with that knowledge and with an extensive detention. And that they had done so earlier in the day, and they're well aware of, you know, all of that. As I said, I would say this is not an argument the plaintiff has made.  Thank you. And if that's not satisfactory, the last section of our brief, pages 42 and 44, address why the district court's decision in that respect was well-founded, but again, this is an argument that is not properly. Okay, that's great. That's extremely helpful. I see my time is running out. I'm happy to answer any further questions that you have. Otherwise, we would ask that this court affirm. Thank you. What basis should we affirm on, specifically? You could say, I would ask this court to say that the district court's decision on Bivens was well-founded, and that. The decision on the. On the Bivens claim. On the Bivens was well-founded. And that the 1983 claim fails because even accepting plaintiff's view of the law, he has not alleged facts that would show that he meets any of the tests to hold a federal defendant liable under 1983. For the excessive force. Correct. Correct. Thank you. Just briefly responding. First, Your Honor, Chief Judge Elrod, you are correct. I did allege that they were all participating in a seizure without probable cause. And I listed all. But you don't allege that before us? You're not appealing the decision of the district court in that regard? I am. I am. In fact, that's a mistake. What I said in the start off of my brief was the judge said that I had made no, I made an allegation of a pretext stop for a traffic stop. And I started off my brief and said that's not correct. I've never alleged that the act was a pretextual traffic stop. In fact, in my Fourth Amendment complaint, I don't even allege he was stopped because he wasn't stopped. In fact, I even put in the paragraph, I believe it's six, that all of this was related to a traffic stop of someone else. No, I contested that finding. He said that my allegation was a pretextual traffic stop. That's false. I said the whole thing was a pretext. And in this particular Fourth Amendment complaint, that's what I'm alleging, that all of this was a pretext. In fact, I allege to the extent a conspiracy is necessary, there was a meeting of the minds. There was a meeting of the minds that using a pretext for request for assistance, that they would stop and be able to stop and question any Hispanic, although there was no articulable basis to do so, which is a violation of constitutional law under the United States versus Vignone Pons. I think opposing counsel's point is in your brief to us. Yes. You didn't make that. You tied it specifically to the excessive force claim. I'm looking at page 12 in the summary of the argument. The lower court held joint action test applies only to private individuals and instead you're saying cause he acted under federal or state law engaging conspiracy to violate his Fourth Amendment right to be free from excessive force. Okay. And then you say this was error. That's the only error on appeal that I say that you're arguing to us, the district court made. Well, I think that is trying to limit me. Let's just go with your response to the excessive force claim, which seems to be what you briefed. Well, that is, it ended up in excessive force. The argument then is, okay, so I'm starting off with just being on reasonable seizure, so I'm protected now. I can shoot somebody. Federal officers weren't even there at the stop. So, we're focused on you saying cause he has 1983 liability.  Cause he shows up well after the stop and then he's involved in the pursuit and he shoots. You are and you have made the claim to us that the shooting was the constitutional violation he's liable to. I've also alleged in the complaint. I know. Well, where in the brief did you? You can use up your time looking for it. No, I don't want to waste my time. Why don't you focus on what you briefed and tell us what the government misstated legally or factually in their response. Okay. Legally, they have no authority to make any arrest at all. None. They're only allowed to arrest. Get back to that. So, do you want to talk about the excessive force claim? And we will look thoroughly at the brief and determine whether or not you raised this. I assure you. But why don't you turn to your excessive force claim that Judge Tickinson has asked you to turn to, unless you want to say something else. It's . . . Once they went down the path of an unconstitutional stop, it ultimately ended up in an unreasonable force claim. You can't then say that if you make . . . If you start off with just making an illegal stop, but ultimately the main problem is the excessive force, that now I'm limited to just excessive force. If you look at just the pure statement of Knights, conspire or act jointly with state officials for the constitutional deprivation, I've alleged a constitutional deprivation. Not just the excessive force, but participating in a seizure where they have no authority under federal law and no probable cause. They are engaging in an unconstitutional stop, a seizure. Okay. So, the logic of that really is about as expansive 1983 liability. Every time federal officers show up after a stop has occurred, they're liable under 1983 if there was an unconstitutional initial stop? If they assist in apprehending the person? No. That's not what I said. I said quite the opposite. I said simply because I'm alleging that the whole incident was unconstitutional. Where do you draw the line saying that, okay, at this point in time, you've gone from unconstitutional to really unconstitutional, but now you shot the guy. We have your argument. We appreciate both arguments in the case, and the case is submitted. Thank you. Thank you.